# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

JUDITH DIGHELLO,

        Plaintiff,

v.

THURSTON FOODS, INC.,

        Defendant.

Civil Action No.
3: 16 - CV - 1340 (CSH)

DECEMBER 3, 2018

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DOC. 33]

**HAIGHT, Senior District Judge:**

### I. INTRODUCTION

In July of 2016, Plaintiff Judith Dighello commenced this employment discrimination action against her former employer, Defendant Thurston Foods, Inc. ("Thurston"), in the Connecticut Superior Court for the Judicial District of New Haven, at Meriden. *See Dighello v. Thurston Foods, Inc.*, No. NNI-CV-16-6009441-S (Conn. Super. Ct. July 18, 2016). On August 8, 2016, Defendant removed the action to this Court, under 28 U.S.C. § 1441(a) and (c), on the grounds that Plaintiff's action "involves a federal question as Plaintiff seeks to recover damages pursuant to the FMLA [Family Medical Leave Act], 29 U.S.C. § 2612, *et seq*."[1] Doc. 1 ("Notice of Removal"), ¶ 4. The

---

[1] Under 28 U.S.C. § 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." "Federal question" jurisdiction is the sole basis upon which Thurston asserts that this Court has subject matter jurisdiction.

    Furthermore, the factual allegations in the Complaint do not support the existence of "diversity of citizenship" subject matter jurisdiction in this case. *See* 28 U.S.C. § 1332(a)(1). From the face of the Complaint, Thurston is a Connecticut corporation, "organized under the laws of the State of Connecticut," with its principal place of business located in Wallingford, Connecticut. Doc. 1, ¶ 2. As a corporate entity, for purposes of diversity jurisdiction, Thurston is thus a citizen of

Notice of Removal was filed in compliance with 28 U.S.C. § 1446(b), "within 30 days of Thurston's receipt of the Complaint." *Id.*, ¶5.

In her Complaint, Plaintiff alleges nine causes of action. In the first three counts of her Complaint, Plaintiff alleges violations under Connecticut's Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60(a)(1). These include the "First Count" for discrimination based on "sex/gender" and wrongful termination; the "Second Count" for disability discrimination, perceived disability discrimination, and wrongful termination; and the "Third Count" for failure to accommodate. In her fourth and fifth counts, Plaintiff includes two retaliation claims: the "Fourth Count" for retaliation in violation of Conn. Gen. Stat. § 46a-60(a)(4) and the "Fifth Count" for retaliation in violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2612, *et seq*. Also, under the FMLA, Plaintiff pleads the "Sixth Count" for alleged interference in violation of the FMLA. Next, Plaintiff includes two state law tort claims as the "Seventh Count" and "Eighth Count": intentional infliction of emotional distress and common law wrongful discharge, respectively. Finally, Plaintiff sets forth a "Ninth Count," alleging that by terminating Plaintiff for exercising her federal and state constitutional rights to free speech, Thurston violated Conn. Gen.

---

Connecticut, 28 U.S.C. § 1332(c)(1). On her Civil Summons in state court, Plaintiff provided her home address as "887 Hanover Road, Apt. C, South Meriden, CT 06451." Doc. 1, at 6. If this address was her *domicile* when she commenced her action and at the time of removal, then she is also a citizen of Connecticut. *See Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000). Under such circumstances, it appears likely that both parties are citizens of Connecticut. Thurston has failed to assert or prove otherwise.

Moreover, and in any event, because Thurston is a citizen of Connecticut, incorporated in the state in which this Court sits, the case would not be removable based on "diversity of citizenship" under 28 U.S.C. § 1441. That statute provides: "A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants *is a citizen of the State in which such action is brought*." 28 U.S.C.A. § 1441 (b)(2) (emphasis added).

Stat. § 31-51q.

Previously, the Court granted in part and denied in part Defendant's "Motion to Dismiss" [Doc. 16] under Rule 12(b)(6), Fed. R. Civ. P. In particular, the Court dismissed Plaintiff's claims under the FMLA in the Fifth and Sixth Counts of her Complaint with respect to her alleged illness of "walking pneumonia and respiratory infections," but allowed those FMLA claims to proceed as to her alleged "serious health condition" of asthma. *Dighello v. Thurston Foods, Inc.*, 307 F. Supp. 3d 5, 31 (D. Conn. 2018). The Court also denied the motion to dismiss on Plaintiff's two wrongful discharge claims in the Eighth and Ninth Counts.[2] *Id*. Thurston now moves for summary judgment on all remaining claims in Plaintiff's Complaint. The Court resolves the motion herein.

## II. STANDARD FOR SUMMARY JUDGMENT

The Second Circuit has repeatedly declared that, pursuant to Rule 56(a), Fed. R. Civ. P., "[s]ummary judgment is appropriate only if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 533 (2d Cir. 2016).[3] "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the

---

[2] For additional discussion regarding the Court's Ruling on Thurston's Rule 12(b)(6) motion to dismiss, *see* Part IV.B., *infra*.

[3] Rule 56(a), Fed. R. Civ. P., captioned "Motion for Summary Judgment or Partial Summary Judgment," provides:

> A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

In deciding whether to award summary judgment, the court "constru[es] the evidence in the light most favorable to the [nonmoving party]' and 'draw[s] all reasonable inferences and resolv[es] all ambiguities in [its] favor.'" *Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018) (quoting *Darnell v. Pineiro*, 849 F.3d 17, 22 (2d Cir. 2017)). "[A] fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Baldwin v. EMI Feist Catalog, Inc.*, 805 F.3d 18, 25 (2d Cir. 2015) (quoting *Liberty Lobby, Inc.*, 477 U.S. at 248).

Under Rule 56(a), the moving party bears the initial burden of demonstrating that no genuine issue exists as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013). Then, if the movant succeeds in carrying its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).

In sum, the ultimate test "is whether the evidence can reasonably support a verdict in plaintiff's favor." *James v. N.Y. Racing Ass'n,* 233 F.3d 149, 157 (2d Cir. 2000). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Baez v. JetBlue Airways Corp.*, 793 F.3d 269, 274 (2d Cir. 2015) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

### III. FACTS

From the Local Rule 56(a)(1) Statements of the Parties [Doc. 33-2 and Doc. 37-2], the Court

derives the following facts.[4] The Court details the facts for purposes of completeness regarding the record presented.

Thurston Foods is a wholesale food distributor that transports and distributes food to various customers. Doc. 33-2, ¶ 2. In March of 2012, Plaintiff was hired by Thurston as a router, with duties including, *inter alia*, assigning the orders for food products in Thurston's computer system to delivery trucks and scheduling the trucks for customer stops. *Id.,* ¶ 9. Plaintiff was also required to determine whether the trucks were overweight and to be sure they were used efficiently (filled to capacity). Plaintiff routed more than 55 trucks per day. *Id.*, ¶ 11. While employed by Thurston, Plaintiff's direct supervisor was Greg Kastukevich, the manager of the transportation department, who in turn reported to Robert "Bob" Thurston, the "Plant Manager" in charge of "Transportation." *Id.*, ¶ 16. Plaintiff worked for Thurston in this router position continuously until May 7, 2015. *Id.*, ¶¶ 52, 62.

According to Plaintiff, she was informed that an employee named Art Lehne was hired to be a liaison between drivers, sales, and dispatch at Thurston Foods. *Id.*, ¶ 18. He was trained as a "back-up router," but Plaintiff believes that he was actually trained to replace her in her job. *Id.*, ¶ 19; Doc. 37-2, ¶ 19.

During April of 2015, Plaintiff became ill with a bad respiratory infection or what she has

---

[4] In detailing undisputed or agreed-upon facts, the Court cites only one paragraph number for both "Statements of Fact" [Doc. 33-2 & 37-2] because the numbered paragraphs in the two statements necessarily correspond to each other. *See* D. Conn. L. Civ. R. 56(a) (mandating that opposing papers on summary judgment include a Local Rule 56(a)2 Statement with numbered paragraphs corresponding to the paragraphs contained in the moving party's Local Rule 56(a)1 Statement). The facts recited in Part III. are derived from and cited to the parties' statements of fact and/or sworn deposition testimony. Also, certain internal and lateral citations appearing in the parties's statements of fact are omitted in the Court's citations herein. They may be found in the parties' statements on the Court's case docket at Doc. 33-2 and Doc. 37-2.

termed "walking pneumonia." *Id.*, ¶ 21. She requested two days off from work, in accordance with her doctor's recommendation. *Id.*, ¶ 24. Sick leave was granted for these days. *Id.*, ¶ 26.

At one point during her employment, Plaintiff claims that she endured a confrontation with Kastukevich, sparked by his request for her to falsify information on drivers' daily logs. Doc. 33-2, ¶¶ 36- 37. Plaintiff alleges that the dispute was regarding her refusal to sign inaccurate drivers' logs, which omitted hours driven that were over the legal limit.[5] Doc. 37-2, ¶ 37. Plaintiff states that in response to this refusal, Kastukevich advanced upon her, cornered her in her office, and leaned against her (with her chest touching his torso) and his hand balled into a fist. Doc. 33-2, ¶¶ 38-39. Following this incident, Plaintiff did not return to work the next day. *Id.*, ¶ 42 When Plaintiff returned to the office to meet with Meg Jakiela, Thurston's Human Resources ("HR") representative, Jakiela took Plaintiff to lunch and then had Kastukevich apologize to Plaintiff. *Id.*, ¶¶ 17, 44.

As to safety issues, Plaintiff alleges that she complained to Jakiela about drivers being "over hours" and changing their logs. Doc. 37-2, ¶ 67; Plaintiff's Depo., at 17.[6] She also testified that she complained to Thurston's CEO, Peter Malone, about drivers going over their allowed hours, not getting enough sleep between shifts, and falsifying their manifests. Plaintiff's Depo., at 73, 170-71. Greg Kastukevich and Bob Thurston both testified that Plaintiff raised concerns that more drivers

---

[5] Both Plaintiff and Thurston agree that the drivers were obligated to maintain accurate records of their driving hours. Doc. 33-2, ¶ 68; Doc. 37-2, ¶ 68. However, Plaintiff testified in her deposition that the drivers were pressured to change their logs to appear to comply with federal regulations. Doc. 37-2, ¶ 68 ; *see also* Plaintiff's Depo., at 75, 79-80. She also testified that she was aware that DOT law mandated that a driver could not drive more than 14 hours in one day and 60 hours in one week. *Id.,* at 171. (*See* n. 6, *infra*, for the filing location of Plaintiff's deposition transcript in the record.)

[6] In the record, excerpts of the transcript of Plaintiff's deposition testimony are filed at Doc. 33-2 (Ex. C), at 59-191, and Doc. 37-4 (Ex. 1), at 1-62.

were needed to make the allotted deliveries and that the current drivers were going over the permitted hours. Kastukevich Depo., at 20-21; Thurston Depo, at 21.[7] Jakiela also testified that Plaintiff had raised complaints about not having enough trucks and employees. Jakiela Depo., at 23.[8]

Plaintiff testified that the drivers were responsible for maintaining their logs but they were pressured to change them to appear to be in compliance with DEP regulations. Plaintiff's Depo., at 73. Drivers who drove more than fourteen hours a day and/or sixty hours per week were not allowed to include these figures in their logs. *Id.*, at 90, 171. In fact, according to testimony by Plaintiff, one driver named Jose was fined for being over hours and then reprimanded by Thurston.[9] *Id.*, at 74.

Plaintiff maintains that, although asked to do so by Kastukevich, she did not falsify any documents because she refused to fill out a missing driver's log. Doc. 33-2, ¶ 73; Plaintiff's Depo., at 167. She also testified that she complained about drivers exceeding their time limits mandated by federal regulations. Doc. 37-2, ¶ 77; Plaintiff's Depo., at 171-73.

Plaintiff was told when she started work not to send a truck on the road that was overweight. Doc. 33-2, ¶ 78. She testified, however, that she was later told that there was a "buffer" when it

---

[7] Pages of the transcript of Greg Kastukevich's deposition testimony appear at Doc. 33-2 (Ex. D), at 242-88; and Doc. 37-5 (Ex. 2), at 1-27. The transcript of the deposition testimony of Robert ("Bob") Thurston is filed at Doc. 37-6 (Ex. 3), at 1-9.

[8] Pages of the deposition testimony of Margretta ("Meg") Jakiela are filed at Doc. 33-2 (Ex. E), at 289-334. Meg testified that she is the HR representative for Thurston Foods and the daughter of John J. Thurston, the company's President. Doc. 33-2, at 295-96.

[9] Plaintiff testified at her deposition that Kastukevich not only wanted her to initial the drivers' DOT logs for him, he also wanted her to make up false logs for missing days and scribble the signature of the drivers on such made-up logs. Plaintiff's Depo., at 163-64; *see also* Doc. 37-2, ¶ 71. She testified that when drivers falsified their logs to prevent them from being over the hours limit, Kastukevick did not want to sign them and that is why he instructed her to sign. Doc. 37-2, at 9 (¶ 5). When she refused to sign, he cornered her and screamed in her face. *Id.*, at 10 (¶ 5); Plaintiff's Depo., at 84.

came to the weight of trucks and it was all right to send out an overweight truck, based on Thurston's needs or wants, if the truck was not routed to go near a weigh station. Doc. 33-2, ¶ 79; Plaintiff's Depo., at 85-86.

With respect to additional job duties, Plaintiff has stated that she was assigned the task of maintaining fuel logs for Thurston's operation of on-site fueling stations. Doc. 33-2, ¶ 45. These logs were mandated by the Connecticut Department of Environmental Protection ("DEP"). *Id.* In preparing the reports, Plaintiff claims she was not given all of the pertinent information or raw data so that her report was not accurate. *Id.*, ¶ 50. On May 7, 2015, Plaintiff submitted the inaccurate reports to Bob Thurston, who "started yelling at Jim Thurston and then . . . at [her]."[10] *Id.*, ¶¶ 51-52. Because of this yelling, Plaintiff informed Jakelia of HR, who was in the area, that she "need[ed] a break" or "a few minutes" and then Plaintiff exited the building. *Id.*, ¶ 53. Upon entering the parking lot, Plaintiff got in her car, "drove down the street" to get a coffee and parked in the Stop & Shop parking lot. *Id.*, ¶ 54. She alleges that she then phoned Kastukevich, who told her not to return to the Thurston building unless or until she spoke with Jakiela on her cellphone. *Id.*, ¶ 55.

Plaintiff alleges she attempted to phone Jakiela for the next "hour or two" but was unable to reach her until Jakiela was on her lunch break. *Id.*, ¶¶ 56-67. According to Plaintiff, Jakiela told her that the missing information necessary to prepare the logs had been found; and Plaintiff allegedly told Jakiela that she had been subjected to "illegal harassment." *Id.*, ¶ 58. At one point during the

---

[10] Plaintiff alleges that Kustukevich's behavior in "threatening physical harm while in her office" and making sexual comments with another co-worker were outrageous. Doc. 37-2, ¶ 65. She alleges that on the day when he screamed at her about the logs, he "cornered her in her office screaming in her face." Plaintiff's Depo., at 84. She also believes that Bob Thurston's behavior in yelling at her was outrageous. *Id.*

conversation, Plaintiff asked Jakiela if she was being fired and the phone line went dead.[11] *Id.,* ¶ 59. Thereafter, Thurston alleges that Plaintiff offered to work an additional two weeks if needed.[12] *Id.*, ¶ 60; *see also* Doc. 33-2, at 238. Kastukevich sent her a text message in response to her offer, stating: "Judy, you walked off the job and left us high and dry [.] [W]e don't need an additional 2 weeks. We will box up your personal effects and I will meet you somewhere. Just let me know where." Doc. 33-2, ¶ 62; *Id.,* at 237. Plaintiff alleges that she responded with "who is this from?" Doc. 37-2, ¶ 62.

Plaintiff asserts that she did not quit, but was instead terminated by Thurston Foods.[13] Doc. 37-4, at 47 ("I did not, on the life of my daughter, quit that job."). The parties dispute the reason for Plaintiff's termination and/or whether she knows who terminated her. Bob Thurston testified at his deposition that he and Jakiela made the decision to terminate Plaintiff after she essentially quit. In particular, he stated that "since she walked off the job," he and Jakiela decided "that she had quit." Thurston Depo., at 45. In contrast, Plaintiff believes that she was fired in retaliation for complaints

---

[11] Plaintiff testified in her deposition that when she complained about her job on the last day of her employment, Jakiela told her that she needed to grow a "thicker skin" and do what she was told. Plaintiff's Depo., at 124. Jakiela also told Plaintiff that if she couldn't take people yelling at her, maybe she was "just not right for this position." *Id.*; *see also* Jakiela Depo., at 44.

[12] Plaintiff denies that she ever offered two weeks notice before she was told that Thurston no longer needed her. Doc. 37-2, at 12; Plaintiff's Depo., at 140. Plaintiff clarifies that only after she was told she was let go did she offer to work two more weeks because she knew her backup was Mitch Lukins, who was on vacation; so she did not want to leave her co-workers understaffed. Plaintiff's Depo., at 138.

[13] In that regard, Jakiela has admitted that Plaintiff never said the words "I quit," and never said that she "wasn't coming back to work." Jackiela Depo., at 40, 48.

she made to Kastukevich and due to the fact that she is a woman.[14]  Doc. 37-2, ¶ 64.

Under these circumstances, Plaintiff alleges she was wrongfully terminated on May 7, 2015. *Id.*, ¶ 48.  In particular, Plaintiff alleges that she was discriminated against on the basis of her sex/gender, treated disparately as compared with similarly situated male employees, subjected to a hostile work environment, and replaced by a male employee with less experience.  *Id.*, ¶ 49.

In her Complaint, as described *supra*, Plaintiff alleges nine causes of action. Defendant Thurston moves for summary judgment on each of those claims.

## IV. DISCUSSION

### A. Second, Third, Fifth and Sixth Counts

In the last sentence on the first page of her memorandum of law in opposition to Thurston's summary judgment motion, Plaintiff "concedes summary judgment can enter as to the claims of Disability Discrimination, Failure to Accomodate and the FMLA Counts (2nd, 3rd, 5th & 6th Counts)." Doc. 37-1, at 1.  Because Plaintiff does not object to entry of summary judgment on these claims, the Court will grant Thurston's motion as to these counts.  Accordingly, summary judgment will enter as to Plaintiff's Second Count for disability discrimination under the CFEPA, Third Count for failure to accommodate under the CFEPA, Fifth Count for retaliation in violation of the FMLA, and Sixth Count for interference in violation of the FMLA. Pursuant to Rule 56(a), Fed. R. Civ. P., as to these counts, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

---

[14] Plaintiff alleges that Kastukevich told her on the day she was fired that "girls can't do this job," Thurston "never had a girl in transportation before[,] and obviously a girl was the wrong choice." Doc. 37-2, ¶ 64. Jakiela also concedes that she told Plaintiff that "maybe the job wasn't meant for her." *Id.* (citing Jakiela Depo., at 44).

Because summary judgment will enter for Thurston on both of Plaintiff's federal statutory (FMLA) claims, the Fifth and Sixth Counts, which are the sole bases for subject matter jurisdiction for removal (*i.e.*, "federal question" jurisdiction, 28 U.S.C. § 1331), the Court must consider whether it should exercise supplemental jurisdiction over the remaining state law claims.[15]

## B. <u>Supplemental Jurisdiction over State Law Claims</u>

A district court's exercise of supplemental jurisdiction is governed by 28 U.S.C. § 1367. Subsection (a) of that provision states that " in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy ...." *Id.* A district court "may decline to exercise supplemental jurisdiction," however, if the district court "has dismissed [from the case] all claims over which it has original jurisdiction." *Id.* § 1367(c)(3).

As the Supreme Court explained in *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966), the justification for exercising supplemental jurisdiction "lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them." In *Gibbs*, the Supreme Court expressly cautioned that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Id.*

As the Second Circuit has noted, " [i]n providing that a district court 'may' decline to exercise

---

[15] For additional discussion regarding subject matter jurisdiction over the present action, *see* n.1, *supra*.

11

such jurisdiction, this subsection is permissive rather than mandatory." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 304 (2d Cir. 2003) (gathering cases). Accordingly, the Second Circuit "review[s] the district court's decision to exercise such jurisdiction under an abuse of discretion standard." *Id*. (citations omitted).

In the case at bar, "[o]f particular relevance here," the district court "has dismissed all claims over which it has original jurisdiction." *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 121–23 (2d Cir. 2006) (citing 28 U.S.C. § 1367(c)(3)) (internal quotation marks omitted). Once all federal claims are dismissed in a case with "federal question" subject matter jurisdiction, the court decides whether to exercise supplemental jurisdiction over the state-law claims by balancing the traditional "values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). In weighing these *Cohill* factors, the United States Supreme Court has indicated that "in the usual case in which federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Cohill*, 484 U.S. at 350 n.7. In such circumstances, the "case properly belongs in state court" and "the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Id.* at 350. *See also Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties . . . . [I]f the federal law claims are dismissed before trial ... the state claims should be dismissed as well.").

In the present case, this Court will, as agreed by the parties, enter summary judgment on the FLMA claims, eliminating them from the action. The remaining claims will all be state law claims: First Count ("Sex/Gender Discrimination and Wrongful Termination in Violation of Connecticut

General Statutes § 46a-60(a)(1)"); Fourth Count ("Retaliation in Violation of Connecticut General Statutes § 46a-60(a)(4)"); Seventh Count ("Intentional Infliction of Emotional Distress"); Eighth Count ("Common Law Wrongful Discharge"), and Ninth Count ("Violation of Connecticut General Statutes § 31-51q"). Each of these claims either arises under a Connecticut state statute or sets forth a tort claim under Connecticut common law.

There are no extenuating or exceptional circumstances that would suggest that this case must remain in federal court. First, judicial economy is not implicated here, where the Court has made no determination on the substance of the state law claims. Although the Court gained limited familiarity with the case when ruling on Defendant's prior Rule 12(b)(6) motion to dismiss [Doc. 16], that motion focused primarily on the federal FMLA claims in the Fifth and Sixth Counts. The only state law claims that were addressed in the Court's Ruling [Doc. 40] were the Eighth and Ninth Counts; and the Court simply had to determine whether the presence of one claim in the action legally precluded the other.[16] A review of the facts alleged on the face of the Complaint was sufficient for the Court to find that the claims were "based on two distinguishable public policies." *Dighello v. Thurston Foods, Inc.*, 307 F. Supp. 3d 5, 30 (D. Conn. 2018). No in-depth factual analysis on the merits of the claims was undertaken or proper on such a Rule 12(b)(6) motion. On

---

[16] Plaintiff's Eighth Count is a common law wrongful discharge claim and her Ninth Count alleges violation of Conn. Gen. Stat. § 31-51q. Defendant argued that both counts alleged that Plaintiff "was terminated for making statements about Defendant's alleged non-compliance with the Federal Motor Carrier Safety Act." Doc. 17, at 12. Moreover, argued Thurston, if an employee's termination violated a public policy already embodied and protected by statute, the common law wrongful discharge claim is precluded. *Id.*, at 13 (quoting *Lopez v. Burris Logistics,* 952 F. Supp. 2d 396, 405 (D. Conn. 2013)). However, the Court found that Plaintiff's claim in the Eighth Count was based on a public policy outside the constitutional "free speech" protection embodied in § 31-51q – namely, the public policy regarding prevention of accidents for public safety. Consequently, the Court allowed both claims to remain in the action. *Dighello v. Thurston Foods, Inc.*, 307 F. Supp. 3d 5, 30 (D. Conn. 2018).

a 12(b)(6) motion to dismiss, all well-pled factual allegations in the complaint are simply assumed to be true. *LaMagna v. Brown*, 474 F. App'x 788, 789 (2d Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

As to the factor of "convenience," access to the Connecticut Superior Court is just as, if not more, convenient for the parties than access to this Court. Both parties have addresses close to, or located in, the Judicial District of New Haven, at Meriden. Thurston's place of operation is Wallingford, which lies immediately south of Meriden, and Plaintiff has provided her home address as South Meriden. In short, neither party would be inconvenienced by remand.

Regarding fairness, there is no indication that either party will be prejudiced by the move. This case has not progressed to "the eve of trial," *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1192 (2d Cir.1996). The parties will have adequate time to prepare for trial if the case is remanded to state court. Furthermore, fairness is bolstered by the state court's resolution of the summary judgment arguments regarding the state law claims.

Also, the Connecticut Superior Court, where Plaintiff filed her Complaint, was her original chosen venue to litigate this action. As discussed *supra*, Defendant Thurston removed the case to this Court on the basis of the federal FMLA claims. There is no indication that Plaintiff has acted in bad faith to induce this Court to remand to state court. In particular, there is no indication that Plaintiff has abandoned her federal claims for the purpose of forum manipulation. After all, in addition to the two federal claims, she has conceded entry of summary judgment on two state-law claims in the Second and Third Counts. Absent the presence of the FMLA claims, the case would have been litigated in state court, where she chose to litigate. The interests of justice favor return to that venue.

Finally, following the guidance of *Gibbs* and *Cohill*, needless decisions based solely on state law should be avoided as a matter of comity. *See, e.g., Wright v. Tenergy Christ Water, LLC*, 606 F. Supp. 2d 241, 243 (D. Conn. 2009). Now that Plaintiff has conceded that summary judgment should enter for Thurston on her only federal claims, the *Cohill* factors of "fairness" and "comity" militate toward remand to state court, where both parties may receive a "surer-footed reading of applicable law" for state claims by a state court. *Gibbs*, 383 U.S. at 726. Connecticut state courts have both the interest and experience in interpreting state law to ensure that these claims are properly resolved.

Defendant Thurston concedes that "[o]f course, the Court may . . . exercise discretion to decline to exercise supplemental jurisdiction over [Plaintiff's] claims." Doc. 39, at 2 (citing 28 U.S.C. § 1367(c)). However, suggests Thurston, "considerations of judicial economy, convenience, fairness and comity weigh in favor of an exercise of supplemental jurisdiction." *Id.* Despite reciting the *Cohill* factors, Thurston provides no analysis to support its assertion.

Thurston's request that this Court exercise supplemental jurisdiction is hardly surprising given that Thurston chose to remove the action to this Court. Nonetheless, for the reasons set forth above, the Court finds that the circumstances of this case do not favor the exercise of supplemental jurisdiction under the *Cohill* factors. Rather, as described above, these factors weigh in favor of remand. In fact, resolution of the case by the Connecticut Superior Court should favor, rather than prejudice, both parties because that Court will interpret its own state law.

In sum, with entry of summary judgment on the federal claims, there are no exceptional facts to warrant the retention of this case before the Court. Moreover, fairness and comity particularly favor remand. The Court will remand the remaining state law claims to the Connecticut Superior

Court for the Judicial District of New Haven, at Meriden, from whence it was removed.

## V. **CONCLUSION**

Due to Plaintiff's express concession with respect to entry of summary judgment for Thurston on her Second, Third, Fifth, and Sixth Counts, the Court hereby GRANTS IN PART Defendant's motion for summary judgment [Doc. 33]. As the parties concur, "there is no genuine issue of material fact" as to these four claims and Defendant is "entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). Specifically, the Court GRANTS summary judgment for Thurston Foods, Inc. on the following claims in the Complaint: (1) Second Count for disability discrimination and perceived disability discrimination and wrongful termination in violation of Conn. Gen. Stat. § 46a-60(a)(1); (2) Third Count for failure to accommodate in violation of Conn. Gen. Stat. § 46a-60(a)(1); (3) Fifth Count for retaliation in violation of the Family Medical Leave Act, 29 U.S.C. § 2612, *et seq.*; and (4) Sixth Count for interference in violation of the Family Medical Leave Act, 29 U.S.C. § 2612, *et seq.*[17] Furthermore, in light of the fact that the Court's subject matter jurisdiction is based solely on "federal question" jurisdiction under 28 U.S.C. § 1331, and the Court has dismissed the only two federal claims in this action, the Fifth and Sixth Counts arising under the FMLA, the Court will exercise its discretion to decline to exercise supplemental jurisdiction over the remaining five state law claims.[18] Under the direction of *Gibbs* and *Cohill*, it is in the interests

---

[17] By conceding entry of summary judgment on her state-law claims in the Second and Third Counts, Plaintiff has abandoned these claims, which has prompted the Court not to remand them to state court.

[18] The Court abstains from making a dispositive ruling on the remaining state law claims which are subject to Thurston's summary judgment motion [Doc. 33]. Upon remand, these claims will be properly resolved in state court. Such claims may potentially involve unsettled questions of state law. *See, e.g., Oneida Indian Nation of New York v. Madison Cty.,* 665 F.3d 408, 439 (2d Cir. 2011) (vacating district court's entry of summary judgment on state law claim where district court

of comity to allow a state court to resolve such claims arising under Connecticut state statute and common law. Moreover, there are no exceptional circumstances for this Court to retain the action. Judicial economy will not be fostered where the case is not on the eve of trial. No firm trial date has been set in this action and the parties have adequate time to either prepare for trial, should any claims ultimately survive, or explore the possibility of settlement.

Given its declination of supplemental jurisdiction over the remaining state law claims in the First, Fourth, Seventh, Eighth, and Ninth Counts, this Court expresses no view as to whether summary judgment should enter as to those claims. The action in this Court is DISMISSED WITHOUT PREJUDICE. The Clerk is directed to REMAND the case, consisting of these five state-law claims, to the Connecticut Superior Court for the Judicial District of New Haven, at Meriden. In so remanding, the Clerk shall include in the file the summary judgment motion addressed to the remaining claims, and CLOSE the case in this Court.

The foregoing is SO ORDERED.

Dated: December 3, 2018
New Haven, Connecticut

*/s/Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
Senior United States District Judge

---

should have declined to exercise supplemental jurisdiction over that claim; the Second Circuit clarified that "it makes more sense for a . . . state court to decide the [Plaintiff's] state-law claims itself based on its understanding of its own law and its own findings of fact"); *Sunnen v. New York State Dep't of Health*, 544 F. App'x 15, 17 (2d Cir. 2013) (vacating district court's 12(b)(6) dismissal of state-law claims where the removed federal claims were dismissed; and remanding case to the district court for the limited purpose of ordering remand of state-law claims to state court).